IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | CRIMINAL NO. CCB-19-0568 |
| v. | * | |
| | * | |
| TRAYVON HALL et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |
| | ******* | |

## GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT 911 CALLS PURSUANT TO FED. R. EVID. 803(1) & 803(2)

At the trial of this matter, the government plans to play audio recordings of 911 calls pertaining to various homicides through the relevant homicide detectives, without testimony from the callers. The 911 calls are excepted from the rule against hearsay because they are present sense impressions and excited utterances. They are also nontestimonial. Accordingly, the government respectfully requests an advance ruling that the calls are admissible pursuant to Federal Rules of Evidence 803(1) and 803(2), and that their admission does not implicate the Confrontation Clause.

### RELEVANT FACTS

At trial, the government plans to play fourteen 911 calls made in relation to the murders of Albert Pittman on July 18, 2016; Shyheim Brown on November 11, 2016, Christopher Hockaday on July 14, 2017; and Steven McKnight on July 6, 2018. The government also plans to play two 911 calls made in relation to the attempted murders of Martinae Weaver on April 13, 2019 and Joseph Williams on May 19, 2019. The recordings provide the callers' real-time observations of pertinent sights and distinct sounds—*e.g.*, multiple gunshots, a victim struggling to stay alive, or a lifeless body on the ground. They are relevant primarily to establish the time, location, and

1

manner of death.  The audio recordings are attached as Exhibit 1 and labeled by homicide and call number.[1]  We provide a brief overview of the calls below.

**Murder of Albert Pittman on July 18, 2016 (approximately 8:56 p.m., 4800 block of Midline Road):**  In Call 1, a female caller reports that she "just heard several gunshots go off out there, and there were people are running and screaming" on the 4800 block of Midline Road.  The caller, who identifies herself as "Watson," is sighing heavily and repeating "Oh my god!" When asked how many shots she heard, the caller replies, "so many I couldn't count!"

In Call 2, a female caller screams, "Please send somebody to 4800 block of Midline Road! Somebody just shot somebody on our lawn and shot our windows out our house!  Please hurry up!"

In Call 3, a female caller who identifies herself as "Michelle" requests police and an ambulance at the 4800 block of Midline.  She reports that she was in her house, heard shots and could see a body laying outside.  She describes the victim as a male and reports that she thinks he is still breathing.

In Call 4, an upset female caller screams, "They shot my door!  Somebody laying on my lawn!"  She gives her location as 4815 Midline Road.  She is so hysterical that the operator tells her to stop screaming.  The caller explains "we were in here eating, and the shots rang through my front window, and there's a body or something laying on my lawn!"

In Call 5, which was placed on July 19, 2016 (the day after Pittman's murder), a female caller from the 4800 block of Midline Road advises the operator that she and her husband found a gun beside their car "on the sidewalk like in the grass" as they were preparing to enter their vehicle.

---

[1] The audio recordings will be provided to the Court on disc.  The defendant has been provided with the recordings via the USAfx file-sharing system.

She asks that police "please come and get this big gun." Police recovered the firearm, and it was matched to the .40 caliber casings found at the crime scene.

**Murder of Shyheim Brown (November 11, 2016, approximately 11:19 a.m., 800 block of W. Lexington Street):** In Call 1, a frantic female caller who identifies herself as "Shakira" requests an ambulance at 800 block of Lexington Street because someone was shot. The caller is breathing heavily and reports hearing gunshots. While the caller is on the phone with the operator, she is looking outside and sees a body lying on the ground outside of her house.

In Call 2, an upset male caller who identifies himself as "Dominick" reports that shots were fired at 845 W. Lexington Street and Poppleton, and that three people were shot. The caller repeats "Oh my god! Oh my god!" The operator tries to calm down the caller, who is outside near the victims. As the caller described, there were in fact three people shot. Two of the victims survived. Shyheim Brown was shot multiple times and died.

In Call 3, a male caller who identifies himself as "Pete" yells, "we need two medics and police stat! Two people down! Shots fired! Shots fired!" The caller tells the operator that he heard the shots from inside of his house, that the victims are still out on the street, and that the victims are still breathing. The caller provides the address as the 800 block of W. Lexington.

**Murder of Christopher Hockoday a/k/a "Hop" (July 14, 2017, approximately 10:58 p.m., 3200 block of W. Baltimore Street):** In Call 1, at 10:58 p.m., a female caller identifying herself as "Markia," screams for an ambulance to come to 5 N. Abington. The caller repeatedly yells, "oh my goodness!" and pleads with the operator to hurry. She is hysterical and tells the operator that the victim was shot and that it looks like he was hit in the chest and in the back. In response to the operator's questions, the caller screams that the victim is breathing but that he is fading. She cries, "that's fucking Hop, yo!" It is clear from the call that the female is near the

3

dying victim, whose nickname was "Hop."

In Call 2, a male caller identifies himself as "Mike" and requests an ambulance because "somebody just got shot… between Baltimore and Abington…right off Hilton." When asked if the victim is awake, the caller advises that "he's crouched over and they talking to him."

In Call 3, a male caller who wishes to remain anonymous yells, "Several shots fired! Man down!" He gives the locations as "Baltimore and Hilton—Abington. Right at the 20 bus stop." In response to a series of questions and with urgency in his voice, the caller tells the operator that the victim is awake and breathing; that the victim is bleeding heavily from more than one wound; and that the victim is "dazing." The operator gives the caller instructions as to how to stop the bleeding and the caller can be heard shouting instructions to others. The caller is on scene as the victim lays dying.

**Murder of Steven McKnight, a/k/a "Bo" (July 6, 2018, approximately 7:35 p.m., unit block of N. Abington Avenue):** In Call 1, at 7:35 p.m., a male caller exclaims, "two of my homeboys' shot!" The caller provides an address of "42 N. Abington…30 N. Baltimore." The caller yells that the victim is "fading in and out," and repeatedly cries out the victim's nickname, "Bo! Bo!"

In Call 2, at 7:36 p.m., a male caller reports that he is inside of his house looking out the front window, that he heard about 10 gun shots, and he thinks that two people were shot. The caller gives an address of 20 N. Abington and describes seeing one of the victims being placed into a car and transported to what he says is the nearest hospital – St. Agnes. The caller's report of hearing "about 10 gun shots" is consistent with the ballistic evidence recovered from the scene, where investigators located 10 9 mm casings and three .45 casings.

In Call 3, at 7:43 p.m., a female caller identifies herself as "Lisa" from St. Agnes Hospital.

She reports, "we just got a gunshot would that walked into the E.R." and describes the patient as male. This second victim, Joseph Gibson, survived his injuries.

**Attempted Murder of Martinae Weaver, a/k/a "Fat Cat" (April 13, 2019, approximately 6:31 p.m., unit block of N. Abington Avenue):** The male caller tells the 911 operator that he "just heard six gunshots and somebody screaming." The caller does not want to provide his address but directs the operator to "Baltimore and Hilton, probably north Abington."

**Attempted Murder of Joseph Williams, a/k/a "Blue" (May 19, 2019, approximately 8:11 p.m., 4900 block of Greencrest Road):** The male caller yells that a man is down and that someone has been shot at the 4900 block of Greencrest. The caller urges the operator to "stop asking questions" and just "come on down!" As the 911 operator attempts to obtain additional information from the caller, he can be heard along with other voices telling the victim, "We gonna move you…you ready?"

## ARGUMENT

**A. The 911 Calls Are Excluded from the Rule Against Hearsay Because They Are Present Sense Impressions Under Fed. R. Evid. 803(1)**

The statements in the 911 calls qualify as present sense impressions under Federal Rule of Evidence 803(1) because they are "statement[s] describing or explaining an event or condition, made while or immediately after the declarant perceived it." All but one of the calls were made within minutes of a shooting, and the callers describe the events they have just observed. Although the call by Ms. A (call 5 pertaining to the murder of Albert Pittman) was made on the day after the Pittman's murder, the caller provided her *real-time* observations of what she sees on the ground next to her car – a big gun. Therefore, all of the calls qualify as present sense impressions. *See, e.g.*, *United States v. Jackson*, 124 F.3d 607, 618 (4th Cir. 1997) (out-of-court statement to responding officer that defendant had been threatening to shoot members of the family was

5

admissible as present sense impression under Rule 803(2); *United States v. Allen*, 2018 WL 1035770, at *2 (D. Md. 2018) (out-of-court statements by 911 caller fell under present sense impression exception to hearsay rule).

**B. The 911 Calls Are Excluded From the Rule Against Hearsay Because They Are Excited Utterances Under Fed. R. Evid. 803(2)**

The 911 calls are also admissible under Federal Rule of Evidence 803(2) because they are "statement[s] relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." All the calls were made while or immediately after the callers witnessed violent or jarring events. The resulting stress of excitement is obvious from the callers' voice and intonation, and the urgency with which they request aid. Some of the calls are peppered with exclamations like "Oh my god!" or "Please hurry!" They therefore qualify as excited utterances. *See United State v. Boyd*, 237 Fed. App'x 892 (4th Cir. 2007) (holding that the audiotape and transcript of a 911 call were admissible under the excited utterance exception to the hearsay rule where the caller "sounded excited on the tape of the call" and made the call "immediately after the shots were fired"); *United States v. Brito*, 427 F.3d 53 (1st Cir. 2005) (holding that an anonymous 911 call in which the caller stated she had just heard gunshots and seen a man with a gun, and provided a physical description of the suspect, was properly admissible as an excited utterance).

**C. The 911 Calls Are Non-Testimonial and Do Not Implicate the Confrontation Clause**

The Confrontation Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Statements are testimonial "when the circumstances objectively indicate that . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006).

6

In *Davis v. Washington*, the Supreme Court held that "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." 547 U.S. 813, 822 (2006). *Davis* concluded that a 911 call regarding an ongoing domestic dispute was nontestimonial. In *Michigan v. Bryant*, the Supreme Court held that *Davis*'s logic also applied in the context of statements made at the scene of a shooting, just after the shooter had left the scene. 562 U.S. 344 (2011). The Court reasoned: "[W]hen an officer arrives on the scene and does not know where the perpetrator is, whether he is armed, whether he might have other targets, and whether the violence might continue at the scene or elsewhere, interrogation that has the primary purpose of establishing those facts to assess the situation is designed to meet the ongoing emergency and is nontestimonial." *Id.* at 371–72; *see also id.* at 373–74 (reasoning that an "armed shooter" whose motive and location are unknown represents an "an ongoing emergency" because there is "a threat potentially to the police and the public").

In *United States v. Mouzone*, the Court held that 911 calls admitted in relation to a shooting were not testimonial as "each caller simply reported his observation of events as they unfolded." 687 F.3d 207, 215 (4th Cir. 2012). Here, the 911 calls were all made in the immediate aftermath of a shooting, with the primary purpose of enabling police and paramedics to respond to an ongoing emergency. Accordingly, the calls are non-testimonial, and the Confrontation Clause poses no bar to their admission through the relevant homicide detectives at trial.

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court admit the 911 calls pursuant to Federal Rules of Evidence 803(1) and 803(2).

Respectfully submitted,

Erek L. Barron
United States Attorney

By: _____/s/_____
Kim Y. Oldham
Peter J. Martinez
Assistant United States Attorneys
36 S. Charles Street, 4th Floor
Baltimore, Maryland 21201
(410) 209-4800

**CERTIFICATE OF SERVICE**

   I HEREBY CERTIFY that on August 12, 2022, a copy of the foregoing Motion in Limine was electronically filed with the Clerk of Court via CM/ECF and thereby served on all counsel of record.

                ___/s/_____
                Kim Y. Oldham
                Assistant United States Attorney